UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN HEYDENBURG,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

Hon. Janet T. Neff

Case No. 1:18-cv-868

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. For the reasons articulated herein, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the

Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker

considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **BACKGROUND**

Plaintiff was 24 years of age on his alleged disability onset date.  (ECF No. 10-6, PageID.205, 220).  He successfully completed high school and worked previously as a shipping/receiving clerk.  (ECF No. 10-2, PageID.56).  Plaintiff applied for benefits on July 31, 2013, alleging that he had been disabled since July 31, 2011, due to narcolepsy, depression, anxiety, high blood pressure, and knee, back, and wrist pain.  (ECF No. 10-6, 10-7, PageID.205-10, 220, 222).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (ECF No. 10-4, 10-5, PageID.170-204).  On May 17, 2017, Plaintiff appeared before ALJ Michael Condon, with testimony being offered by Plaintiff and a vocational expert.  (ECF No. 10-3, PageID.80-133).  In a written decision dated August 9, 2017, the ALJ determined that Plaintiff was not disabled.  (*Id*, PageID.44-57).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (*Id*, PageID.33-38).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders. He can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) status-post right wrist fracture/surgery; (2) history of narcolepsy; (3) headaches; (4) attention deficit hyperactivity disorder (ADHD); (5) major depressive disorder/affective disorder;

(6) anxiety disorder/generalized anxiety disorder; and (7) insomnia, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.46-49).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform medium work subject to the following limitations: (1) he can lift/carry 50 pounds occasionally and 25 pounds frequently; (2) during an 8-hour workday, he can sit for 8 hours and stand/walk for 8 hours; (3) he can frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (4) he can never climb ladders, ropes, or scaffolds; (5) he can frequently grip and grasp with his right upper extremity; (6) he cannot be exposed to hazards such as unprotected heights, moving mechanical parts, or moving machinery; (7) he cannot operate motor vehicles; (8) he can occasionally operate leg or foot controls bilaterally; (9) he is limited to simple, routine work that involves making simple work-related decisions; and (10) he can tolerate occasional workplace changes. (*Id*, PageID.49-50).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this

issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).

This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case here, as the ALJ questioned a vocational expert.  The vocational expert testified that there existed approximately 895,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (*Id*, PageID.123-32).  This represents a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

I.      **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contains copies of Plaintiff's medical treatment records and other statements.  The ALJ described this evidence as follows:

> Although the treatment notes from the claimant's primary care provider indicate a history of narcolepsy, there are very few complaints from the

claimant or symptoms reported during periods of treatment (Ex. B1F; B6F). In September 2013, the claimant presented to his primary care provider, Laura Kass, PA-C, regarding issues with sleep patterns, but he also indicated the problem had started as a part of mental health disorders including depression and anxiety (Ex. 1F/1). The claimant was referred for a sleep study and an evaluation of his mental health issues (Ex. 1F/3). An October 2013 polysomnogram documented the claimant's mild snoring (Ex. B6F/33). There is no indication the claimant underwent an evaluation for mental health issues. During the follow up visits, Ms. Kass indicated the claimant's narcolepsy was stable (Ex. B6F/29-37). Subsequent treatment notes document the claimant's ongoing complaints of fatigue and tiredness, but aside from medication adjustments, there is no significant changes to his treatment (B6F/36).

The claimant underwent a consultative examination with R. Scott Lazzara, MD, in October 2013 and reported he is able to sit if he can adjust his weight, stand 30 to 45 minutes, and has no real problems with walking on good days (Ex. 3F/l). Dr. Lazzara noted the claimant appeared fatigued, but he had generally normal physical functioning including normal respiratory and cardiovascular exams, intact grip strength and unimpaired dexterity, and no difficulty performing orthopedic maneuvers (Ex. 3F/2). He had normal range of motion in his spine and major joints, normal motor strength and tone, intact sensation and reflexes, and normal gait without an assistive device (Ex. 3F/2-4).

In January 2014, the claimant underwent an evaluation at the University of Michigan Sleep Clinic for his possible narcolepsy and the neurological examination was largely normal (Ex. B6F/39). He had fluent speech without dysarthria and he was able to answer questions logically and linearly. He had normal cranial nerve findings, normal tone in all extremities with no adventitious movements, full muscle strength in upper and lower extremities, normal coordination and gait, and normal reflexes in the upper and lower extremities. The examiner noted the claimant has multiple symptoms in the context of a mood disorder and polypharmacy (Ex. B6F/40). It was recommended he undergo a mental evaluation for a psychiatric diagnosis and a goal of consolidating medications as well as undergo an updated polysomnogram. The claimant was advised to not drive and to not operate heavy machinery or power tools when tired or if he has been sleep deprived. The updated September 2015 polysomnogram revealed findings consistent with only mild snoring (Ex. B14F/29-31). Similarly, a sleep latency study failed to reveal any significant findings and was

normal (Ex. B14F/32). Again, there is no indication the claimant pursued a mental evaluation after this recommendation.

The record documents some presentations to emergency departments for symptoms related to his sleep issues, but there is no referral to additional specialists or changes to his treatment regimen. For instance, in September 2015 he presented for his complaints of insomnia and syncopal episodes (Ex. B10F/72; B13F). However, after noting normal examination findings and a discussion with a treating provider, the emergency department physician discharged the claimant stating that he is being treated by the appropriate specialist and is prescribed the appropriate medications (Ex. B10F/74). The provider further noted the claimant has a problem with making appointments, compulsively changing his mind on things, and being complaint with treatment modalities and follow up.

Overall, the record is consistent with finding the claimant suffers some limitations due to his narcolepsy symptoms, but the objective evidence, type of treatment he receives, and frequency of his visits and reports of symptoms is consistent with the limitations as assessed above. The undersigned has limited the claimant to frequent postural movements with no climbing of ladders, ropes, or scaffolds and no exposure to hazards including unprotected heights, moving mechanical parts, moving machinery, or operation of motorized vehicles.

The record also documents the claimant's intermittent complaints of headaches (Ex. B6F/27). He was provided with prescription medications and subsequent notes fail to document significant complaints (Ex. B6F/37). Often, the claimant denies experiencing migraines or headaches (Ex. B6F/45, 55, 59, 65, 70, 101, 104; B10F/77, 90). When the claimant did report migraine symptoms, his treatment was generally limited to medication refills or adjustments in dose (Ex. B6F/64, 76). In March 2015, he was referred to neurology for further evaluation of his migraine symptoms, but it is unclear if this evaluation took place (Ex. B6F/78). Imaging studies of the claimant's head have failed to reveal any significant findings (Ex. B10B/28). The claimant presented to emergency departments with complaints of a headache or migraine, but there is no evidence of significant changes to his treatment for the impairment (Ex. B10F/50-62). At one visit, the claimant reported he was wearing contacts with an incorrect prescription, but he refused to remove the contacts even after admitting the headache may have resulted from the contact use (Ex. B10F/61). The undersigned has accommodated the claimant's headache symptoms by limiting him to

frequent postural movements except no climbing ladders, ropes, or scaffolds. The lifting restrictions of the residual functional capacity assessment are consistent with the claimant's testimony that he could lift his nephew, who weighs 58 pounds. This is also consistent with the physical examinations throughout the period at issue documenting the claimant's normal muscle tone in the upper and lower extremities, normal reflexes and sensation, and full strength in the upper and lower extremities (Ex. B1F/6; B6F/39, 64, 78; B10F/43, 52).

The record documents the claimant's June 2015 injury to the right wrist with x-rays showing a nondisplaced partially comminuted fracture (Ex. Bl0F/22, 66-72; B12F). The claimant experienced ongoing pain and subsequent imaging studies revealed an unhealed fracture with deformity (Ex. B10F/32-35, 75-80; Bl5F). The claimant underwent surgery in January 2016 and primary care treatment notes as well as the claimant's testimony indicates the surgery was generally successful in alleviating his symptoms (Ex. B10F/40; Bl 7F/29). Examinations revealed tenderness and bony tenderness, but also indicated normal range of motion, two-point discrimination, sensation, reflexes, and strength (Ex. B10F/77-78; B15F/5). There are subsequent emergency department visits for pain complaints and medication refill requests (Ex. B18F; B19F). While primary care treatment notes after the surgery indicate some complaints of wrist pain in December 2015, but the examination shows no abnormalities of sensation and is limited to tenderness (Ex. B6F/94-96). At the hearing, he indicated his ongoing treatment was limited to prescription ibuprofen. The following visit to his primary care provider in May 2016 indicates similar findings limited to tenderness and normal range of motion of the right wrist (Ex. B6F/99). The undersigned has limited the claimant to no greater than frequent gripping and grasping with the right upper extremity to accommodate his ongoing symptoms with activity.

Regarding the claimant's mental impairments, the record documents the claimant's history of treatment for depression and anxiety (Ex. 1F/24). However, much of the treatment notes indicate normal psychiatric examination findings and conservative treatment of medication management (Ex. 1F). Beginning around the time of application, the claimant was noted to be pleasant and have good judgment and insight, intact memory, and normal mood and affect (Ex. 1F/6-21; B6F). He was able to recall three of three objects after a five-minute delay and a 10-minute delay. Subsequent primary care provider treatment notes indicate his anxiety disorder and major depressive disorder were stable and document the same normal psychiatric exam

findings with treatment limited to medication adjustments and refills (Ex. B6F/29-60, 79-118). With the appropriate medications, the claimant has reported tolerating his medications well and noticing improvement in his mood (Ex. B6F/52).

The claimant underwent a psychological evaluation with Neil Reilly, MA, and James Lozer, EdD, in October 2013 (Ex. B2F). He reported ongoing depression resulting in lack of motivation, poor concentration, and poor memory (Ex. B2F/1). However, the mental status examination revealed normal functioning including logical and organized thought processes, clear and understandable speech, and grossly intact memory and concentration (Ex. B2F/4). With mental capacity testing, the claimant was able to recall five digits forward and three backwards; recall two of three objects after a delay; identify recent and former presidents; demonstrate an adequate fund of knowledge; perform simple calculations and serial seven subtractions; interpret proverbs; and identify similarities and differences (Ex. B2F/4-5).

There is not much mention of complaints related to the claimant's ADHD throughout the period at issue. However, in November 2016, he presented to his primary care provider and reported his symptoms are about the same (Ex. B6F/101). Similar to many of his other complaints, his ADHD has been treated with medication management.

The record including the normal psychiatric findings in the treatment notes along with the claimant's presentation and performance at the consultative evaluation, the undersigned finds the evidence supports finding the claimant capable of doing simple routine work that involves making simple work-related decisions and tolerating occasional workplace changes. These limitations are consistent with the claimant's and his mother's statements that his anxiety interferes with his ability to handle stress, but he does okay with changes in routine (Ex. B2E/7; B3E).

(Op., 8-14, PageID.51-54).

## II.        Medical Opinion Evidence – Treating Physicians

On or about May 7, 2013, Plaintiff's counsel authored a four-item questionnaire which he then mailed to Dr. Russell Thompson and Physician's Assistant (P.A.) Laura Kass. (ECF No. 10-14, PageID.944-45). On or about May 14, 2013, Dr. Thompson

and/or P.A. Kass completed the questionnaire by merely circling "yes" to the four questions contained therein. Despite expressly being asked to include comments regarding Plaintiff's ability to function, neither care provider offered any additional comments. The ALJ afforded less than controlling weight to this item. (Op., 11-12, PageID.54-55). Plaintiff argues that he is entitled to relief on the ground that the ALJ's rationale for discounting this evidence is not supported by substantial evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Secretary of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

-11-

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Ibid.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Ibid.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*,

509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

By circling the word "yes" in response to four questions drafted by Plaintiff's counsel, Dr. Thompson and P.A. Kass have arguably asserted the following: (1) Plaintiff experiences narcolepsy; (2) Plaintiff experiences difficulty regularly "maintaining a 24-hour schedule"; (3) Plaintiff is "likely to fall asleep at any time and without warning"; and (4) Plaintiff is "likely to stay asleep for more than 18 consecutive hours at a time on a regular basis." (*Id*, PageID.944). The ALJ discounted this questionnaire on the following grounds:

> While the undersigned concurs the claimant suffers from symptoms related to narcolepsy and has included postural and environmental precaution limitations to accommodate for the symptoms, the evidence fails to warrant further limitation. The undersigned notes that the primary care providers have opined greater limitation than the claimant testified to at the hearing. The claimant testified that he has some warning prior to his falling asleep and he also testified that his sleep cycle includes sleeping 12 to 18 hours rather than greater than 18 hours. While this testimony is not entirely consistent with the objective evidence of record, it contradicts the statements of Ms. Kass and Dr. Thompson. Second, the undersigned notes that Ms. Kass has been the primary treating provider during the period at issue and there is no evidence of Dr. Thompson's involvement with the claimant's treatment (Ex. B6F). Ms. Kass's treatment notes fails to document complaints or objective evidence consistent with the extent of her statements. The primary care notes indicate ongoing complaints of daytime sleepiness, falling asleep while watching television or eating at times, and feeling tired all the time (Ex. B6F/44-87). However, the notes also document the claimant's treatment has been limited to prescription medication refills and adjustments and normal examination findings (Ex. B6F). The claimant also described activities inconsistent with the statement that he is likely to fall asleep at any time including reports that he was in a tree at one point and he has been building shelves and moving (Ex. B6F/70; Bl0F/88; B21F). Overall, the course of the claimant's treatment showing normal physical examination findings, normal sleep studies,

> normal imaging studies, and conservative treatment measures, the undersigned does not find support to accord great or significant weight to the statements of Ms. Kass and Dr. Thompson

(Op., 11-12, PageID.54-55).

Merely circling the word "yes" in response to questions drafted by Plaintiff's attorney does not constitute a "medical opinion" to which deference must be accorded. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *Pelak v. Commissioner of Social Security*, 2016 WL 6694477 at *7 (W.D. Mich., Nov. 15, 2016) ("ALJs are not bound by conclusory statements of doctors, particularly where they appear on 'check-box forms' and are unsupported by explanations citing detailed objective criteria and documentation"); *Birgy v. Commissioner of Social Security*, 2017 WL 4081528 at *5 (W.D. Mich., Sept. 15, 2017) (same).

Moreover, to the extent that the questionnaire constitutes a medical opinion, the ALJ articulated valid reasons, supported by substantial evidence, for discounting such. The ALJ recognized that Plaintiff experiences narcolepsy. The statement that Plaintiff experiences difficulty "maintaining a 24 schedule" articulates no functional limitations which are inconsistent with the ALJ's RFC findings. With respect to the statements that Plaintiff is "likely to fall asleep at any time and without warning" and sleep longer than 18 consecutive hours, as the ALJ recognized such are

-14-

not supported by the medical record. Plaintiff's argument is essentially that this Court should re-weigh the evidence and reach a different conclusion which it is not permitted to do. Accordingly, this argument is rejected.

### III.         Medical Opinion Evidence – Non-Treating Sources

As noted above, the ALJ concluded that Plaintiff could stand/walk up to eight hours during an eight-hour workday. The record contains opinions from two non-treating sources, Dr. R. Scott Lazzara and Dr. Shahida Mohiuddin, suggesting that Plaintiff's ability to stand is less robust than the ALJ concluded. Plaintiff argues that he is entitled to relief because the ALJ failed to provide sufficient reasons for discounting these particular opinions.

Unlike opinions offered by treating physicians, opinions offered by non-treating sources "are never assessed for controlling weight." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013). Instead, opinions from non-treating sources are evaluated based on a variety of factors, including the examining relationship (or lack thereof) between the claimant and the source, the medical source's specialization (if any), and the consistency and supportability of the source's opinion. *Ibid.* (citing 20 C.F.R. § 416.927(c)(2)).

Following an October 21, 2013, consultative examination, Dr. Lazzara reported that Plaintiff could stand for only 4-6 hours daily. [1] (ECF No. 10-8, PageID.317-23). The ALJ discounted this opinion on the ground that it is inconsistent with the results of Dr. Lazzara's own examination as well as the results of numerous other examinations and reports. (Op., 12-13, PageID.55-56). Dr. Mohiuddin never examined Plaintiff, but nevertheless concluded that while Plaintiff was capable of performing medium level work, he could stand/walk for only "about 6 hours in an 8-hour workday." (ECF No. 10-4, PageID.162-69). The ALJ discounted this opinion on the ground that it was not supported by the medical record. The ALJ's conclusion in this regard is supported by substantial evidence as the discussion of the medical evidence above reveals.

## IV.     Plaintiff is not Entitled to a Sentence Six Remand

After the ALJ issued his decision denying Plaintiff's claim for benefits, Plaintiff appealed the matter to the Appeals Council. As part of his appeal, Plaintiff submitted additional evidence that had not been presented to the ALJ. Plaintiff argues that he is entitled to relief because the Appeals Council failed to consider the

---

[1] The Court notes that the precise nature of Dr. Lazzara's opinion is not clear as it is based upon an interpretation of an illegible hand-written notation. (ECF No. 10-8, PageID.322). In assessing Dr. Lazzara's opinion, the ALJ presumed that the doctor's opinion vis-à-vis Plaintiff's ability to stand was more restrictive than his own RFC findings. However, the ALJ did not address the doctor's illegible notation or suggest how such should be interpreted. Nevertheless, the Court will interpret the doctor's opinion as limiting Plaintiff to standing 4-6 hours during an 8-hour workday.

evidence in question. Plaintiff also argues that this Court should remand this matter so that this evidence can be considered by the ALJ.

First, the alleged failure by the Appeals Council to consider the additional evidence in question is not reviewable by this Court. The authority of this Court is limited to assessing whether the Commissioner's *final decision* denying benefits is supported by substantial evidence. *See* 42 U.S.C. § 405(g) (expressly limiting judicial review to "any final decision of the Commissioner of Social Security"); *Bowens v. Barnhart*, 101 Fed. Appx. 93, 94 (6th Cir., June 11, 2004) (the jurisdiction of the federal courts extends only to the review of "final decisions of the Commissioner"). The Court is likewise not persuaded by Plaintiff's argument that remand to consider the evidence in question is appropriate.

It is well understood that this Court cannot consider evidence which was not presented to the ALJ. *See, e.g., Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that the evidence in question is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148.

Plaintiff cannot satisfy this standard. The evidence in question falls into two categories: (1) information regarding Plaintiff's termination from employment in 2010, and (2) a July 2017 application by Plaintiff's mother to obtain leave under the Family and Medical Leave Act (FMLA) so that she can care for Plaintiff. (ECF

No. 23-1 at PageID.993-1003). This evidence is not new because it predates the ALJ's decision. *See, e.g., Templeton v. Commissioner of Social Security*, 215 Fed. Appx. 458, 463 (6th Cir., Feb. 8, 2007). The evidence is likewise not material as it is not reasonable to conclude that consideration of such by the ALJ would have resulted in a different outcome. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

Dated: August 12, 2019 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. ☐ 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a forfeiture of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Berksire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).